UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| **Charles Bertrand,**<br>Petitioner<br>-vs-<br>**Eric Himpton Holder, Jr., et al.,**<br>Respondents | CV-10-0604-PHX-GMS (JRI)<br><br>**REPORT & RECOMMENDATION**<br>**On Petition for Writ of Habeas Corpus**<br>**Pursuant to 28 U.S.C. § 2241** |

## I. MATTER UNDER CONSIDERATION

Petitioner, incarcerated at the time in the Pinal County Jail in Florence, Arizona, under the custody and control of the U.S. Immigration and Customs Enforcement Agency (ICE) filed through counsel an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on August 31, 2010 (Doc. 12). On September 26, 2010, Respondents filed their Response (Doc. 19). Petitioner filed a Reply on October 4, 2010 (Doc. 21).

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. ORIGINAL ENTRY

Petitioner, a native and citizen of Haiti, was paroled into the United States on January 25, 1992, from Guantanamo Bay, Cuba. (Exhibit 1, Record of Alien.) (Exhibits to the Response, Doc. 19, are referenced herein as "Exhibit ___.")

On or about June 3, 1998, he was convicted in Florida for Attempted Aggravated

Battery, Sale of Cannabis, and Possession of Cannabis. (Exhibit 3, Judgment; Exhibit 4, Judgment.)  Nonetheless, despite this conviction and other criminal arrests, on March 29, 1999, Petitioner was granted Permanent Legal Resident status. (Exhibit 5, Memo. re LPR.)

Subsequently, on or about May 22, 2001, Petitioner was convicted of Child Neglect. (Exhibit 6, Judgment.)

**B. ORIGINAL REMOVAL PROCEEDINGS**

On or about September 4, 2001, Petitioner was served with a Notice to Appear (Exhibit 7), charging him with being removable as a criminal alien having been convicted of a crime of child neglect. Petitioner asserted claims for asylum, withholding of removal, and protection under the Convention Against Torture, all of which were denied, and he was ordered removed to Haiti. (Exhibit 8, IJ Order 12/6/01; Exhibit 9, Oral Dec.)

Petitioner filed an appeal with the Board of Immigration Appeals, which was denied on April 8, 2002. (Exhibit 10, BIA Dec. 4/8/02.)

Petitioner then filed an appeal with the Eleventh Circuit Court of Appeals, which was dismissed on August 13, 2002. (Exhibit 11, 11th Cir. Docket.)

On or about October 7, 2002, Petitioner left the United States. (Exhibit 12, Not. to Appear.)

**C. CURRENT ENTRY AND REMOVAL PROCEEDINGS**

**Removal Proceedings** - On June 1, 2005, Petitioner arrived at Miami International Airport, and applied for admission as a returning Legal Permanent Resident, tendering his Alien Registration Card, which had been rendered void as a result of his removal orders. (Exhibit 12, Not. to Appear.)

A Notice to Appear (Exhibit 12) was issued the same date, charging Petitioner with being removable on the basis of his use of fraudulent documentation, as an undocumented immigrant, and as a previously removed alien.

Petitioner was eventually transferred to and venue in the removal proceedings was

changed to, Arizona (Exhibit 14, Order 12/15/05), and on February 7, 2006, the immigration judge accepted Petitioner's admission of the charges of removability, found his applications for asylum, withholding of removal, and withholding under the Convention Against Torture were pretermitted by his conviction for a particularly serious crime, and denied his application for deferral of removal under the Convention Against Torture based upon events occurring in Haiti subsequent to his earlier removal. (Exhibit 15, Oral Dec. 2/7/06.)

Petitioner filed an appeal with the Board of Immigration Appeals, which was dismissed on June 23, 2006. (Exhibit 16, BIA Dec. 6/23/06.)

Petitioner appealed to the Ninth Circuit Court of Appeals, who issued a temporary stay of removal, and then eventually remanded to the BIA for reconsideration based upon Petitioner's evidence of future torture as a criminal deportee.

**On Remand** - On October 8, 2006, the BIA in turn remanded to the immigration court for reconsideration based upon previously unavailable evidence. (Exhibit 18 BIA Dec. 10/8/06.)

On November 5, 2008, while the matter was still pending before the immigration judge, Petitioner appealed to the Ninth Circuit Court of Appeals. (Exhibit 25, Docket, Case 08-74560.) That appeal was dismissed for failure to prosecute on December 11, 2008. (Exhibit 24, Order 12/11/08.)

After hearings on October 31, 2008, and February 6, 2009, the immigration judge again ordered Petitioner removed to Haiti and denied his application for deferral of removal under the Convention Against Torture. (Exhibit 19, IJ Order 2/6/09.)

Petitioner again appealed to the Board of Immigration Appeals, who dismissed the appeal on June 11, 2009. (Exhibit 20, BIA Dec. 6/11/09.)

Petitioner then appealed again to the Ninth Circuit Court of Appeals, who issued a temporary stay of removal on July 7, 2009. (Exhibit 26, Docket, Case 09-72089.) On October 16, 2009, the stay was continued through the proceeding. (*Id.*) On June 14, 2011, the case was argued and submitted to the Ninth Circuit Court of Appeals. No decision has issued as of this writing. *See* https://ecf.ca9.uscourts.gov/cmecf/servlet/TransportRoom,

PACER docket for 9th Circuit Case 09-72089, last accessed 8/10/11.

**D.  DETENTION**

Petitioner has been detained since his arrival in the United States on June 1, 2005, first in Florida, and now in Arizona.

On September 28, 2006, ICE issued a Decision to Continue Detention (Exhibit 17), based upon Petitioner's lack of employment or a residence, and his criminal history.

On September 17, 2009, ICE issued a Decision (Exhibit 21) finding that Petitioner had failed to demonstrate that he did not present a risk of danger to the community or a flight risk, and order him to continue detained.

Petitioner then requested review of his detention by the immigration court, which took "no action" in an order issued March 3, 2010 (Exhibit 22).

**E.  PRESENT FEDERAL HABEAS PROCEEDINGS**

On August 31, 2010, Petitioner filed his Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 12), challenging his continued detention pending removal to Haiti, on statutory, substantive due process, and procedural due process grounds.

On September 26, 2010, Respondents responded, arguing that Petitioner, as an arriving alien seeking asylum, is mandatorily detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), and even if subject to due process protections from prolonged detention pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2011), Petitioner cannot show his removal is not likely in the reasonably foreseeable future.

On October 4, 2010, Petitioner filed his Reply (Doc. 21), arguing that *Zadvydas* applies, and the suspension of removals to Haiti due to the January, 2010 earthquake makes his removal unlikely.

/ /

/ /

/ /

## III. APPLICATION OF LAW TO FACTS

### A. GROUND ONE: STATUTORY AUTHORITY FOR DETENTION

In his Ground One, Petitioner argues that his removal order is final, that he is detained under 8 U.S.C. § 1231 more than six months after it became final, and that under *Zadvydas* and its progeny, he must be released because his removal is not likely in the reasonably foreseeable future.

In contrast, Respondents argue that Petitioner is rightfully detained indefinitely under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).

**Detention of Misrepresenting or Unpapered Aliens** - Section 1225(b) of Title 8 of the United States Code governs the inspection of aliens seeking admission into the United States. That statute generally provides that if an immigration officer determines that an arriving alien is inadmissible on the basis of a material misrepresentation (8 U.S.C. § 1182(a)(6)(C)) or a lack of documentation (8 U.S.C. § 1182(a)(7)), then the officer may summarily order the alien removed. However, if the alien indicates an intention to apply for asylum, the officer must refer the alien for an interview by an asylum officer. *See* 8 U.S.C. § 1225(b)(1)(A).

If the asylum officer determines that there is no credible fear of persecution, then the asylum officer is directed to order the alien removed "without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I). However, an expedited review by an immigration judge is provided for. 8 U.S.C. § 1225(b)(1)(B)(iii)(III).

The statue provides for "Mandatory Detention" of the alien during this process, and beyond.

> Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.

8 U.S.C. § 1225(b)(1)(B)(iii)(IV).[1]

**Application of Section 1225(b) to Petitioner** - Petitioner has admitted that upon his

---

[1] The Attorney General is permitted to make exceptions for "urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5).

arrival in the United States in 2005, he was subject to removal under §1225(b).  (*See* Exhibit 12, Not. to Appear; Exhibit 15, Oral Dec. 2/7/06.)  Petitioner is still "pending a final determination of credible fear of persecution."  8 U.S.C. § 1225(b)(1)(B)(iii)(IV).  Thus he continues to be subject to detention under that statute.

**No Application of Section 1231 to Petitioner** - Petitioner argues in his Petition, however, that he is nonetheless detained, not pursuant to the mandatory detention provisions in § 1225(b)(1)(B), but instead pursuant to 8 U.S.C. § 1231, which governs the detention of aliens following the issuance of a removal order.  (Amend. Pet. Doc. 12 at 8.)

Assuming *arguendo* that the general post-removal order detention under § 1231 trumps the more specific mandate under § 1225(b)(1)(B)(iii)(IV) for un-papered or misrepresenting aliens such as Petitioner, Petitioner's current detention would still not be subject to § 1231.  Section 1231(a)(2) governs the detention of removable aliens "[d]uring the removal period," and § 1231(a)(6) governs detention "beyond the removal period."  Section 1231 makes no provision for detention prior to the removal period.

Section 1231(a)(1) defines the removal period as a 90 day period commencing on the latter of, *inter alia*, the removal order becoming administratively final, or if judicially reviewed with a stay of removal, upon the issuance of the court's final order.  8 U.S.C. § 1231(a)(1)(B). Although Petitioner's removal order is currently administratively final, it is subject to judicial review before the Ninth Circuit Court of Appeals, and a stay of removal has been entered and remains in effect in that case.  Consequently, Petitioner's removal period has not commenced, and the detention provisions under § 1231 do not apply.

Because § 1231(a)(6) does not apply, the Court's decisions in *Zadvydas* (governing detention of removable admitted aliens) and *Clark v. Martinez,* 543 U.S. 371 (2005) (governing detention of inadmissible aliens), both of which were limited to detention under § 1231(a)(6), do not apply to Petitioner. *See Clark*, 543 U.S. at 377 (discussing *Zadvydas* as a statutory interpretation, and extending it to inadmissible aliens). *See also Maravilla-Alvarez v. Gonzales,* 2007 WL 902301 (D.Ariz.,2007) (§ 1231 did not apply until 9th Circuit issued mandate, and thus *Zadvydas* and its progeny did not apply).

Accordingly, Petitioner's continued detention remains governed by 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), and his Ground One is without merit.

**B. GROUND TWO - SUBSTANTIVE DUE PROCESS**

In his Ground Two, Petitioner argues that under the reasoning of *Zadvydas*, his continued detention is a violation of his rights to substantive due process. However, *Zadvydas* was concerned only with the statutory construction of post-removal order detention under 8 U.S.C. § 1231(a)(6).

> Consequently, interpreting the statute to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.

533 U.S. at 699.

Moreover, the *Zadvydas* Court was careful to distinguish between the due process rights of deportable and those of inadmissible aliens. The Court distinguished the situation of Mr. Zadvydas, who was a deportable alien, from the alien in *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), who was "a once lawfully admitted alien who left the United States, returned after a trip abroad, was refused admission, and was left on Ellis Island, indefinitely detained there because the Government could not find another country to accept him." *Zadvydas*, 533 U.S. at 692. The latter could constitutionally be indefinitely detained, while the former could not.

Here, Petitioner is in the shoes of Mezei, not Zadvydas. And thus he may be detained indefinitely without violating due process.

> While excludable aliens might, therefore, enjoy some constitutional protections, we find that applicable Supreme Court precedent squarely precludes a conclusion that they have a constitutional right to be free from detention, even for an extended time.

*Barrera-Echavarria v. Rison,* 44 F.3d 1441, 1449 (9th Cir. 1995).

It is true that in *Clark v. Martinez,* the Court revisited § 1231(a)(6) and determined that the construction applied in *Zadvydas* applied equally whether the alien was admitted and deportable, or unadmitted and inadmissible. However, the Court acknowledged that perhaps

"the statutory purpose and the constitutional concerns that influenced our statutory construction in *Zadvydas* are not present for aliens, such as Martinez and Benitez, who have not been admitted to the United States." 543 U.S. at 380. Nonetheless, the Court concluded that those different constitutional concerns "cannot justify giving the same detention provision a different meaning when such aliens are involved." *Id. See also Xi v. U.S. I.N.S.*, 298 F.3d 832 (9th Cir. 2002) (pre-*Clark* case extending *Zadvydas* to inadmissible aliens). But again, Petitioner is not detained pursuant to § 1231(a)(6).

Moreover, unlike the statute at issue in *Zadvydas* and *Clark*, *i.e.* 8 U.S.C. § 1231, and the statute at issue in cases such as *Tijani v. Willis*, 430 F.3d 1241 (9th Cir.2005), *i.e.* 8 U.S.C. § 1226(c), and *Casas–Castrillon v. Department of Homeland Security*, 535 F.3d 942 (9th Cir.2008), *i.e.* 8 U.S.C. § 1226(a), the statute under which Petitioner is currently detained applies only to inadmissible aliens. Thus the "one for all" analysis employed in *Clark* and *Xi*, to extend *Zadvydas* to inadmissible aliens cannot be applied to Petitioner's detention under § 1225(b)(1)(B)(iii)(IV).

Accordingly, as an unadmitted, inadmissible alien, Petitioner is not entitled under the Due Process Clause to a release from detention, and his Ground Two is without merit.

## C. GROUND THREE - PROCEDURAL DUE PROCESS

In his Ground Three, Petitioner argues that the immigration judge found he had no jurisdiction to consider his release request, and that he has a procedural due process right to a bond redetermination, because" ICE does not make decisions regarding detainees' custody status in a neutral and impartial [manner]." (Amend. Pet. Doc. 12 at 16.)

In *Diouff v. Napolitano*, 634 F.3d 108 (9th Cir. 2011), the Ninth Circuit held that an admitted alien being deported had a due process right to a neutral decision maker in resolving his request for release from post-removal period detention. "[P]rolonged detention under § 1231(a)(6), without adequate procedural protections, would raise serious constitutional concerns." 634 F.3d at 1086. Similarly, in *Casas–Castrillon v. Department of Homeland Security*, 535 F.3d 942 (9th Cir.2008), the court addressed the prolonged detention of aliens

under § 1226(a), while the alien is seeking direct judicial review of their administratively final orders of removal. In that case, however, the alien was a legal permanent resident being removed based on criminal convictions.

In contrast, as an unadmitted alien, Petitioner has not, in the eyes of the law, yet entered the country and thus has no procedural due process rights.

> An excludable alien, however, has no procedural due process rights regarding his admission or exclusion and thus "stands on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.' "

*Barrera-Echavarria*, 44 F.3d at 1449 (quoting *Mezei*, 345 U.S at 212).

It is true that *Barrera-Echavarria* did not directly address procedural due process in detention proceedings, and the Ninth Circuit has recognized "the entry doctrine does not categorically exclude non-admitted aliens from all constitutional coverage." *Kwai Fun Wong v. U.S.,* 373 F.3d 952, 974 (9th Cir. 2004). Thus, they are protected under the Equal Protection Clause to the extent that they may not be discriminated against on the basis of something such as skin color. *Id.* at 974. They "may not be punished prior to an adjudication of guilt in conformance with due process of law." *Id.* at 973. And, they "are entitled under the due process clauses of the fifth and fourteenth amendments to be free of gross physical abuse." *Id.* Nonetheless, the Ninth Circuit has not extended the protections of procedural due process to inadmissible aliens, and has since reaffirmed that they are "not entitled to the constitutional protections provided to those, such as deportable aliens, within the territorial jurisdiction of the United States." *Alvarez-Garcia v. Ashcroft,* 378 F.3d 1094, 1098 (9th Cir. 2004) (internal quotations omitted).

Accordingly, Petitioner's Ground Three is also without merit.

**D. SUMMARY**

As an inadmissible alien, in expedited removal proceedings pursuant to 8 U.S.C. § 8 U.S.C. § 1225(b), subject to judicial review and a stay of removal, Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). As an inadmissible alien, he

has no substantive or procedural due process rights to be free from detention pending the conclusion of those proceedings and his removal. Thus, Petitioner's Petition is without merit and must be denied.

## IV. CERTIFICATE OF APPEALABILITY

Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." However, such certificates are only required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1). This case arises under 28 U.S.C. § 2241, and does not attack a State court detention. Accordingly, no ruling on a certificate of appealability is required, and no recommendation thereon will be offered.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Amended Petition for Writ of Habeas Corpus, filed August 31, 2010 (Doc. 12) be **DENIED.**

## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to *Local Civil Rule 7.2(e)(3)*, unless otherwise permitted by the Court, an objection to a Report and Recommendation shall not exceed ten

(10) pages. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

DATED: August 16, 2011

                                                JAY R. IRWIN
                                         United States Magistrate Judge

S:\Drafts\OutBox\10-0604-012r RR 11 08 10 on HC.wpd